# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

JAMES COOK,                                )
                                           )
                    Plaintiff,             )
                                           )
            v.                             )            No. 2:20-cv-00024-SRC
                                           )
CHANTAY GODERT, et al.,                    )
                                           )
                    Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff James Cook for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $6.99. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against defendants Chantay Godert, Kim Samang, and Melody Griffin. Plaintiff's First and Fourteenth Amendment claims will also be dismissed. However, the Court will direct the Clerk of Court to issue process on defendants Lukendra Lockhart, Kalley Campbell, Rachel Slaughter, Jeffrey McCollum, and Sandra Shepard in their individual capacities as to plaintiff's Eighth Amendment claims of deliberate indifference to his medical needs.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion to proceed in forma pauperis, plaintiff submitted a copy of his inmate account statement. (Docket No. 4). The account statement shows an average monthly deposit of $34.93. The Court will therefore assess an initial partial filing fee of $6.99, which is twenty percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73

(8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Northeast Correctional Center (NECC) in Bowling Green, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. The complaint names the following defendants: Warden Chantay Godert; Correctional Officer Lukendra Lockhart; Nurse Kalley Campbell; Nurse Rachel Slaughter; Dr. Jeffrey McCollum; Dr. Kim Samang; Medical Records Clerk Sandra Shepard; and Medical Contract Monitor Melody Griffin. (Docket No. 1 at 3-5). Defendants are sued in both their official and individual capacities.

The complaint is handwritten on a Court-form. Attached to the complaint are a number of exhibits, including copies of plaintiff's informal resolution request (IRR), IRR response, grievance, grievance response, grievance appeal, and grievance appeal response. The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

In his "Statement of Claim," plaintiff asserts that he arrived at NECC in January 2015. (Docket No. 1 at 7). Over the years, he suffered from various medical ailments, resulting in diagnoses of irritable bowel syndrome, internal and external hemorrhoids, constipation, and rectal prolapse. To deal with these issues, plaintiff was given ointments and suppositories, stool softeners and fiber supplements, and pads and baby wipes. He was also told to get "plenty of exercise." Nevertheless, plaintiff states that his "health continued to deteriorate."

On March 16, 2018, plaintiff states that he began asking for a referral to a specialist or a surgeon, and "requesting decent conditions of confinement." (Docket No. 1 at 14-15). He contends that a letter of his was forwarded to Warden Godert and Medical Contract Monitor Griffin, "making them aware that plaintiff's condition posed a risk to his health and safety." (Docket No. 1 at 15). Plaintiff states that his request "for decent conditions of confinement" was denied.

On May 28, 2018, plaintiff self-declared a medical emergency after feeling dizzy and faint. (Docket No. 1 at 8). When he went to medical, however, he alleges that Officer Lockhart told him to return to his cell to get his uniform shirt. Plaintiff advised Officer Lockhart that he could not make it back. In response, Officer Lockhart threatened to write plaintiff a conduct violation if he did not leave medical immediately. Plaintiff left medical but "due to his illness, he fell out in the grass." Later that day he was issued a conduct violation.

On June 1, 2018, plaintiff filed an IRR asking that Officer Lockhart be removed from the medical post. Plaintiff claims that Warden Godert denied this request, even though she acknowledged that Officer Lockhart should not have enforced dress-code rules during a self-declared medical emergency. According to the "warden's response" attached to the complaint, Warden Godert did agree with plaintiff that Officer Lockhart failed to adhere to policy by making him return to his housing unit for proper attire. (Docket No. 1-4 at 12). Warden Godert stated this issue would be addressed. The "warden's response" also notes that after leaving medical, plaintiff "sat down on the sidewalk" and claimed to have chest pains. Plaintiff was evaluated and his vitals checked. As there was no emergent condition, plaintiff was returned to his housing unit.

Plaintiff states that during June 2018 and July 2018, Officer Lockhart was "continually overheard spreading rumors about plaintiff with" Nurse Campbell and Nurse Slaughter. (Docket No. 1 at 8-9).

On June 30, 2018, plaintiff alleges that Nurse Slaughter refused to assess plaintiff's self-declared emergency, even though he had advised her that he was dizzy, in pain, and could not use the restroom. (Docket No. 1 at 9). Plaintiff filed an IRR following this event.

On July 4, 2018, plaintiff states that when he reported to medical, Officer Lockhart asked two different officers to write him a conduct violation. (Docket No. 1 at 9). Both officers refused. Plaintiff filed a "reprisal grievance" requesting the removal of Officer Lockhart "from the medical post." The grievance was denied.

Plaintiff states that during the months of June, July, and August 2018, his condition worsened. During this time, he "continually sought medical treatment by" submitting health service requests. (Docket No. 1 at 10). Plaintiff alleges, however, that Nurse Campbell and Nurse Slaughter "continually denied emergency medical care." He also states that his requests to see a

5

physician in May, June, and July 2018 were denied. Plaintiff believes these denials occurred because NECC did not have a provider at those times.

Plaintiff asserts that he "has been a patient of Corizon-NECC since 2015," and that he had "not had a problem with medical staff until he exercised his right to NECC's grievance system."

On August 6, 2018, Records Clerk Shepard gave plaintiff "an open package of supplies that were disposed of." Subsequently, plaintiff believes that Shepard called the provider and had his supplies discontinued. (Docket No. 1 at 11).

On August 15, 2018, plaintiff met with Dr. McCollum. Plaintiff advised Dr. McCollum that his hemorrhoids were worsening, causing pain, discomfort, and a buildup of waste. At that time, plaintiff requested to see a specialist or a surgeon. Dr. McCollum denied the request "because it was out of Corizon's budget." Dr. McCollum also denied plaintiff's request for further testing to rule out other conditions. Plaintiff also asked Dr. McCollum to have his supplies continued, so that he could deal with the leakage of feces caused by his hemorrhoids. This request was denied, and Dr. McCollum "discontinued all of plaintiff's ointments, suppositories, [and] fiber supplements, leaving plaintiff with nothing for his condition, but a package of wipes." (Docket No. 1 at 11-12).

In August 2018, Records Clerk Shepard refused to give plaintiff his package of wipes. (Docket No. 1 at 12). This occurred even after plaintiff advised Shepard that he needed the wipes to "clean leaked feces in the housing unit showers, and [the] sink in his cell." In September 2018, Shepard continued to deny plaintiff his monthly package of wipes, telling him he no longer had a lay-in for wipes. At some point, plaintiff filed a grievance, and received "a grievance response assuring him that he did have a lay-in for wipes." On October 17, 2018, plaintiff showed this response to Shepard and requested his monthly package of wipes. Shepard continued to refuse to

give plaintiff his wipes, and told plaintiff that she was going to call the doctor. That day, plaintiff's medical lay-in for wipes was discontinued. (Docket No. 1 at 13).

On December 18, 2018, plaintiff states that he was in the segregation unit, which exacerbated his condition, since he had no medication or supplies. (Docket No. 1 at 15). Plaintiff alleges that he continued to make Warden Godert aware that his placement in segregation was dangerous to his health and safety. As such, he requested a cell to himself. Warden Godert denied this request.

On January 1, 2019, plaintiff self-declared as suicidal. He went on a hunger strike and made continued requests to be housed alone in his own cell, without a cellmate. These requests were "continually denied" by Warden Godert. (Docket No. 1 at 16).

On January 15, 2019, plaintiff was seen at sick call. (Docket No. 1 at 13). He asked about two computer entries noting his vital signs and ordering prescriptions when plaintiff was apparently not present. He believes those are "false computer entries."

On January 18, 2019, plaintiff states that he was forced to either take a cellmate or receive a conduct violation. (Docket No. 1 at 16). The next day, plaintiff's new cellmate was given a conduct violation for threatening to fight plaintiff if he was not removed.

On February 10, 2019, plaintiff was sent to medical by two correctional officers who saw him in pain. (Docket No. 1 at 13). When he arrived, he was "denied access to medical treatment" by Officer Lockhart and Nurse Campbell. According to plaintiff, Lockhart and Campbell sat at the "podium laughing and making jokes when [he] left medical in pain." Later that day, plaintiff was called back to medical, at which point Officer Lockhart issued him a conduct violation, and continued to deny him treatment. The conduct violation was ultimately dismissed.

On April 1, 2019, plaintiff met with Dr. Samang. He explained to Dr. Samang "that he was continually suffering without any medical treatment," and that this had been going on for approximately nine months. (Docket No. 1 at 13-14). Dr. Samang examined plaintiff and diagnosed him with hemorrhoids, and possibly a prolapsed rectum. (Docket No. 1 at 14). Thereafter, "plaintiff was re-issued stool softeners, ointments…and wipes, and told to self-declare for a [second] examination."

On April 3, 2019, plaintiff self-declared in order to receive a second examination. However, plaintiff was denied access to medical by Nurse Campbell. Eventually, Dr. Samang was called, and plaintiff was allowed to see him. During the examination, plaintiff states that Dr. Samang received a phone call, after which he changed his diagnosis, finding that plaintiff had "no pre-existing condition of hemorrhoids, no mass, [and] no rectal prolapse." Nevertheless, Dr. Samang continued plaintiff on all his medications.

On April 11, 2019, "plaintiff sent correspondence" to Warden Godert requesting his release from segregation. This request was denied.

Based on the foregoing facts, plaintiff claims that Officer Lockhart, Nurse Campbell, and Nurse Slaughter violated the Eighth Amendment by interfering with his access to medical care, and "by spreading rumors about plaintiff." (Docket No. 1 at 17). He also asserts that Lockhart, Campbell, and Slaughter violated the First Amendment by denying him medical care and spreading rumors about him in retaliation for filing grievances. (Docket No. 21-23).

With regard to Nurse Campbell and Nurse Slaughter, plaintiff claims that Campbell and Slaughter violated the Eighth Amendment "by deliberately denying and disregarding [his] emergent and non-emergent request[s] for the months of June, July, and [August] of 2018. (Docket No. 1 at 17).

With regard to Nurse Campbell, Dr. Samang, Dr. McCollum, and Records Clerk Shepard, plaintiff claims that they violated the Eighth Amendment by intentionally interfering with his prescribed treatment, and knowingly leaving him without supplies for his medical needs. Plaintiff further contends that Campbell, Samang, McCollum, and Shepard violated the First Amendment by interfering with his treatment in retaliation for his use of the grievance process. (Docket No. 1 at 22).

With regard to Records Clerk Shepard and Dr. McCollum, plaintiff alleges that they violated the Eighth Amendment "by teaming up and intentionally discontinuing all of plaintiff's [previously] prescribed prescriptions and lay-ins. (Docket No. 1 at 18). He further accuses Shepard of deliberately denying him his monthly package of wipes, even "after being made aware of the dangers to plaintiff's health and safety."

With regard to Nurse Campbell and Dr. Samang, plaintiff contends that Campbell and Samang violated the Eighth Amendment by denying him adequate exams, and by intentionally changing his diagnosis.

With regard to Dr. Samang and Nurse Campbell, plaintiff claims that they violated the Eighth Amendment by failing to adequately examine, diagnose, and treat him, and by refusing to refer him to a specialist or surgeon. Plaintiff further accuses Dr. McCallum of falsifying computer entries and documents, and "maliciously and sadistically" prescribing medication. (Docket No. 1 at 18-19).

With regard to Warden Godert and Medical Contract Monitor Griffin, plaintiff alleges that Godert and Griffin violated the Eighth Amendment by "failing to act to prevent further violation[s]," and by failing to adequately investigate his complaints. (Docket No. 1 at 19). He also claims they violated the Fourteenth Amendment by denying plaintiff "access to intensive care

and/or transitional care units so he could care for his condition in a [sterile] environment." (Docket No. 1 at 20). Plaintiff further accuses Warden Godert of violating the Eighth Amendment by failing to ensure that NECC had a healthcare provider for May, June, and July 2018, and by making or continuing a policy that denied him "adequate outside recreation" in order to exercise. (Docket No. 1 at 19-20). Plaintiff claims that Warden Godert violated both the Eighth and Fourteenth Amendments by continuing to assign him to segregation, and forcing him to double-cell. (Docket No. 20-21).

Plaintiff states that he has suffered physical and psychological injuries as a result of defendants' actions. (Docket No. 1 at 23). He seeks compensatory damages in the amount of $100,000 against each defendant, as well as "[punitive] and exemplary damages in the same amount." (Docket No. 1 at 24). He further requests that he be ordered to see an outside specialist. Finally, he seeks a preliminary and permanent injunction" requiring Warden Godert to remove him from segregation and place him into a single-man cell.

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants have violated his First, Eighth, and Fourteenth Amendment rights with regard to their roles in his medical treatment, or lack thereof. For the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against defendants Chantay Godert, Kim Samang, and Melody Griffin. The Court will also dismiss plaintiff's First and Fourteenth Amendment claims. However, the Court will direct the Clerk of Court to issue process on defendants Lukendra Lockhart, Kalley Campbell, Rachel Slaughter, Jeffrey McCollum, and Sandra Shepard in their individual capacities as to plaintiff's Eighth Amendment claims of deliberate indifference to his medical needs.

### A.  Official Capacity Claims

Plaintiff has sued all defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, Warden Godert and Officer Lockhart are alleged to be employed by NECC, an institution under the Missouri Department of Corrections. The Missouri Department of Corrections is a department of the State of Missouri. Thus, as explained above, the official capacity claims against Godert and Lockhart are actually claims against the State of Missouri itself. Meanwhile, Nurse Campbell, Nurse Slaughter, Dr. McCollum, Dr. Samang, Records Clerk Shepard, and Medical Contract Monitor Griffin are all alleged to be employed by Corizon, which is contracted to provide healthcare services to NECC. As such, the official capacity claims against the Corizon employees are actually claims against Corizon itself. In order for plaintiff to succeed on his official capacity claims, he must establish the liability of the State of Missouri and Corizon, respectively. *See Kelly*, 813 F.3d at 1075.

i.      **State of Missouri**

To the extent that plaintiff seeks money damages, his official capacity claims against the State of Missouri employees must be dismissed. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983").

Furthermore, to the extent that plaintiff seeks prospective injunctive relief, he has not stated a claim against the State of Missouri. Liability against a governmental entity may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, plaintiff has three ways in which to prove the State of Missouri's liability.

First, plaintiff would have to show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff

needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not provided any facts supporting the proposition that an unconstitutional custom exists. That is, he has not shown continuing, widespread constitutional misconduct, much less that policymaking officials were aware of and tacitly authorized such misconduct. Plaintiff has also not presented any factual allegations regarding any failure to train or supervise.

Plaintiff has, however, identified a policy that he believes is unconstitutional. Specifically, he complains of the NECC policy of having a "worker's schedule" that "kept plaintiff locked inside the housing units all day, and only allowed for approximately [one to two] hours of recreation per week." These facts do not establish an unconstitutional policy. That is, plaintiff has not shown that any NECC limitation of out-of-cell exercise necessarily deprives him of his adequate exercise needs, or demonstrates deliberate indifference. *See Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992) (explaining that when determining whether an inmate has been deprived of adequate exercise, "courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement"). Plaintiff's only factual allegation in support of his contention is his assertion that he only receives one to two hours of recreation per week. This is not sufficient, by itself, to show a constitutional violation. *See Id.* at 449 (determining that forty-five minutes of out-of-cell recreation a week did not violate the constitution); and *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (stating that a limitation of three hours per week did not amount to a constitutional violation).

As discussed above, to the extent that plaintiff is seeking damages, he cannot maintain a claim against the State of Missouri, because the State is not a "person" for 42 U.S.C. § 1983 purposes. Furthermore, to the extent that he is seeking prospective injunctive relief, plaintiff has not shown that his constitutional rights were violated because of a State of Missouri policy, custom, or failure to train. Since he has not stated a claim against the State of Missouri, the official capacity claims against Warden Godert and Officer Lockhart must be dismissed.

      **ii.**    **Corizon**

Plaintiff has also failed to state official capacity claims against Nurse Campbell, Nurse Slaughter, Dr. McCollum, Dr. Samang, Records Clerk Shepard, or Medical Contract Monitor Griffin. These defendants are employed by Corizon, a private entity contracted to provide healthcare to inmates in the custody of the Missouri Department of Corrections. A corporation acting under color of state law, such as Corizon, cannot be liable on a respondeat superior theory. *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

Here, plaintiff presents no factual allegations to establish that he suffered an actionable injury due to a Corizon policy, custom, or official action. Rather, his allegations against the Corizon defendants refer to their individual actions only. As noted above, however, Corizon cannot be liable solely because they employed defendants. Therefore, plaintiff's official capacity claims

against Nurse Campbell, Nurse Slaughter, Dr. McCollum, Dr. Samang, Records Clerk Shepard, and Medical Contract Monitor Griffin must be dismissed.

## B. Individual Capacity Claims

Plaintiff has sued all defendants in their individual capacities. As will be discussed below, the Court will dismiss the individual capacity claims against Warden Godert, Dr. Samang, and Medical Contract Monitor Griffin. With regard to Officer Lockhart, Nurse Campbell, Nurse Slaughter, Dr. McCollum, and Records Clerk Shepard, the Court will direct the Clerk of Court to issue process on plaintiff's Eighth Amendment deliberate indifference claims only.

### i.     Warden Godert

Plaintiff claims that Warden Godert violated his Eighth and Fourteenth Amendment rights. In particular, he states that Godert failed to prevent future constitutional violations; failed to adequately investigate his complaints; failed to have a healthcare provider at NECC for a three-month period; failed to remove him from segregation; failed to give him a single-man cell; failed to give him enough exercise; and failed to provide him access to an intensive care unit.

"[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Rather, in a 42 U.S.C. § 1983 case, liability is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection

between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights).

To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, plaintiff's assertions that Warden Godert failed to adequately investigate his complaints, failed to prevent further violations, and failed to have a healthcare provider at NECC in May, June, or July of 2018 do not establish a link between Godert's actions and the alleged deprivation of plaintiff's rights. The vagueness in plaintiff's allegations as to when he contacted Warden Godert, the substance of that contact, and whether or not Godert actually received plaintiff's correspondence, makes them insufficient to establish a causal connection. That is, they fail to show that Godert's actions resulted in the constitutional violations of which plaintiff complains. Likewise, plaintiff's contention that Godert failed to provide a "healthcare provider" for three months in 2018 fails to demonstrate any harm to plaintiff, as medical staff was still present during this time.

Plaintiff's contention that Godert violated his Eighth and Fourteenth Amendment rights by keeping him in segregation is also unavailing. With regard to the Eighth Amendment, plaintiff has presented no facts showing that his placement in segregation denied him the basic necessities of human life. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (explaining that to demonstrate an Eighth Amendment violation, a prisoner must prove that the defendant's conduct deprived "the plaintiff of the minimal civilized measure of life's necessities"). With regard to the Fourteenth Amendment, plaintiff has not established a protected liberty interest in avoiding segregation, because he has not shown that segregation at NECC was an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit

has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*").

Similar to plaintiff's Fourteenth Amendment segregation claim, plaintiff's assertion that Godert violated his right to due process by not granting him "access to intensive care and/or transitional care" fails, because he has not established that such access constitutes a liberty interest. *See Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Furthermore, plaintiff has not shown that he has a right to have a cell all to himself. *See Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) ("Among the liberties which prisoners do not enjoy is choice of cells"); and *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that plaintiffs had no right "to be housed in a certain barrack or housing unit, or with certain inmates").

Finally, as discussed above, plaintiff has not shown that Warden Godert was deliberately indifferent to his exercise needs by providing one to two hours a week of recreation. *See Wishon*, 978 F.2d at 448-49 (explaining that when determining whether an inmate has been deprived of adequate exercise, "courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement"). Plaintiff's only factual allegation in support of his contention is his assertion that he only receives one to two hours of recreation per week. However, this is not sufficient, by itself, to show a constitutional violation. *See Id*. at 449 (determining that forty-five minutes of out-of-cell recreation a week did not violate the constitution); and *Hosna*, 80 F.3d at 306 (stating that a limitation of three hours per week did not amount to a constitutional violation).

For these reasons, plaintiff has failed to state an individual capacity claim against Warden Godert. Therefore, the claims against Warden Godert must be dismissed.

### ii.      Medical Contract Monitor Griffin

Plaintiff claims that Medical Contract Monitor Griffin violated his Eighth and Fourteenth Amendment rights by failing to prevent further constitutional violations; failing to adequately investigate his complaints; and failing to provide "access to intensive care and/or transitional care."

As with Warden Godert, plaintiff has not established a causal connection between Medical Contract Monitor Griffin's actions and the alleged deprivation of his constitutional rights. *See Madewell*, 909 F.2d at 1208. Indeed, his allegations against Griffin consist mainly of his assertion that a letter was forwarded to her, thereby making her "aware that plaintiff's condition posed a risk to his health and safety." This is insufficient to raise plaintiff's right to relief above the speculative level. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Furthermore, his due process complaint regarding "access to intensive care" fails because he has not demonstrated that he had a protected liberty interest in such access. *See Singleton*, 155 F.3d at 987 (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not").

For these reasons, plaintiff has failed to state an individual capacity claim against Medical Contractor Griffin. Therefore, the claims against Medical Contractor Griffin must be dismissed.

### iii.      Dr. Samang

Plaintiff claims that Dr. Samang violated the Eighth Amendment by intentionally interfering with prescribed treatment; denying him examinations and changing his diagnosis;

19

failing to adequately examine, diagnose, and treat him; and denying him a referral to a specialist or surgeon.

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

20

In this case, plaintiff recounts two separate meetings with Dr. Samang. In the first, Dr. Samang apparently diagnosed plaintiff with a preexisting condition of hemorrhoids, as well as a possibly prolapsed rectum. Dr. Samang then prescribed "stool softeners, ointments…and wipes, and told to self-declare for a [second] examination." During the second examination, plaintiff intimates that Dr. Samang changed his diagnosis as a result of a phone call. Nonetheless, as plaintiff acknowledges, Dr. Samang continued plaintiff on all his medications.

These facts do not sufficiently allege that Dr. Samang was deliberately indifferent to plaintiff's medical needs. There is no indication that Dr. Samang denied plaintiff treatment or refused to meet with him; to the contrary, Dr. Samang examined plaintiff and prescribed him medications. Even if Dr. Samang changed his diagnosis, he did not interrupt plaintiff's prescriptions. Clearly, plaintiff disagrees with the treatment provided by Dr. Samang, suggesting that he should have been seen by a specialist. However, as noted above, disagreement with a treatment decision does not amount to constitutionally deficient medical care. In short, there are no factual allegations establishing that Dr. Samang's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."

For these reasons, plaintiff has failed to state an individual capacity claim against Dr. Samang. Therefore, the claims against Dr. Samang must be dismissed.

### iv.    Officer Lockhart

Plaintiff has alleged that Officer Lockhart violated his rights under the First and Eighth Amendments by retaliating against plaintiff for filing grievances; spreading rumors about plaintiff; and by interfering with his attempts to seek medical care.

With regard to the retaliation claim, the First Amendment generally prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S.

250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

Retaliation does not need to be the "sole motive" in taking an action against the plaintiff, must it must have been a "substantial factor" in the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Furthermore, the plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). *See also Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (explaining that the "[i]f there is a finding that retaliation was not the but-for cause…the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind"). That is, plaintiff must show that he was "singled out" because of his exercise of constitutional rights. *Baribeau*, 596 F.3d at 481. *See also Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (stating that to establish a causal connection, the plaintiff must show that he was "singled out" because of his exercise of constitutional rights).

In this case, plaintiff has adequately alleged that he engaged in a protected activity, to wit: the filing of grievances. *See Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (stating that the right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit). *See also Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (stating "that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983"). He has also presented facts that Officer Lockhart has taken adverse action against him, by issuing conduct violations, by attempting to get other officers to issue him conduct violations, and

by denying him access to medical care. Nonetheless, plaintiff has not asserted any facts showing that retaliatory animus was the but-for cause of Lockhart's action. That is, plaintiff has not demonstrated any causal connection – aside from his own conclusions – between the actions taken against him, and his filing of grievances. Therefore, plaintiff has not stated a First Amendment retaliation claim.

To the extent that plaintiff is asserting that Officer Lockhart's purported "spreading [of] rumors" violates the constitution, such claim also fails. Typically, mere words are not enough to support a claim of a constitutional violation. *See Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (stating that name calling is not a constitutional violation for purposes of a 42 U.S.C. § 1983 action); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (stating that an inmate cannot recover damages for defamation under § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States"); and *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim"). Plaintiff's vague allegation that Officer Lockhart was spreading undescribed rumors is not enough to overcome the general rule that words alone cannot support a § 1983 claim. Therefore, this allegation does not state a claim.

The Court finds, though, that plaintiff's claim of deliberate indifference to his medical needs is sufficient for purposes of 28 U.S.C. § 1915 review. As noted above, Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle* 429 U.S. 103. To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany*, 132 F.3d at 1237-38. In order to establish deliberate indifference, a plaintiff

23

must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts*, 917 F.3d at 1042. Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346.

Here, plaintiff has alleged that Officer Lockhart knew he had a serious medical need, but nevertheless interfered with his ability to seek treatment by denying him access to the medical unit. The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in plaintiff's favor). Therefore, the Court will direct the Clerk of Court to issue process on Officer Lockhart in her individual capacity as to plaintiff's Eighth Amendment claim of deliberate indifference to medical needs only.

### v. Nurse Campbell

Plaintiff alleges that Nurse Campbell violated his rights under the First and Eighth Amendments by retaliating against him for filing grievances; spreading rumors about him; interfering with his access to medical care; denying his medical requests during the month of June, July, and August 2018; intentionally interfering with prescribed treatment; failing to adequately examine, diagnose, and treat him; and by refusing to refer him to a specialist or surgeon.

With regard to the First Amendment retaliation claim, plaintiff has presented only a legal conclusion, which is not entitled to the presumption of truth. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) (explaining that "[a] pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). In particular, plaintiff presents no factual allegations showing how Nurse Campbell's adverse actions were the result of any retaliatory motive. That is, plaintiff has not demonstrated a causal

24

connection. *See Baribeau*, 596 F.3d at 481. Furthermore, as previously discussed, plaintiff's assertion that Nurse Campbell spread rumors about him fails to state a constitutional violation. *See Martin*, 780 F.2d at 1339 (stating that name calling is not a constitutional violation for purposes of a 42 U.S.C. § 1983 action); *Ellingburg*, 518 F.2d at 1197 (stating that an inmate cannot recover damages for defamation under § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States"); and *Hopson*, 961 F.2d at 1378 ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim").

The Court finds, however, that plaintiff's claim of deliberate indifference to his medical needs is sufficient for purposes of 28 U.S.C. § 1915 review. Deliberate indifference, as previously noted, can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346. Here, plaintiff alleges that Nurse Campbell is a nurse at NECC. He alleges that in June, July, and August 2018 Nurse Campbell continually denied his health service requests. He also states that she denied him access to medical on different occasions, thereby denying or delaying his access to medical care. Accepting these allegations as true, the Court will direct the Clerk of Court to issue process on Nurse Campbell in her individual capacity as to plaintiff's Eighth Amendment deliberate indifference to medical needs claim only.

### vi.  Nurse Slaughter

Plaintiff alleges that Nurse Slaughter violated his rights under the First and Eighth Amendments by retaliating against him for filing grievances; spreading rumors about him; and by denying him access to medical care.

25

With regard to the First Amendment retaliation claim, plaintiff has presented only a legal conclusion, which is not entitled to the presumption of truth. *See Johnson*, 901 F.3d at 977 (explaining that "[a] pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). In particular, plaintiff presents no factual allegations showing how Nurse Slaughter's adverse actions were the result of any retaliatory motive. That is, plaintiff has not demonstrated a causal connection. *See Baribeau*, 596 F.3d at 481. Furthermore, as previously discussed, plaintiff's assertion that Nurse Slaughter spread rumors about him fails to state a constitutional violation. *See Martin*, 780 F.2d at 1339 (stating that name calling is not a constitutional violation for purposes of a 42 U.S.C. § 1983 action); *Ellingburg*, 518 F.2d at 1197 (stating that an inmate cannot recover damages for defamation under § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States"); and *Hopson*, 961 F.2d at 1378 ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim").

The Court finds, however, that plaintiff's claim of deliberate indifference to his medical needs is enough to survive 28 U.S.C. § 1915 review. Deliberate indifference, as previously noted, can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346. Here, plaintiff alleges that Nurse Slaughter is a nurse at NECC. He alleges that in June, July, and August 2018 Nurse Slaughter continually denied his health service requests. In particular, plaintiff states that on June 30, 2018, Nurse Slaughter refused to assess plaintiff's self-declared emergency, even though he advised that he was dizzy and in pain. Accepting these allegations as true, the Court will direct the

26

Clerk of Court to issue process on Nurse Slaughter in her individual capacity as to plaintiff's Eighth Amendment deliberate indifference to medical needs claim only.

### vii.    Dr. McCollum

Plaintiff alleges that Dr. McCollum violated his rights under the First and Eighth Amendments by interfering with his treatment in retaliation for his filing of grievances; by discontinuing his medical supplies; and by falsifying computer entries and documents.

With regard to the First Amendment retaliation claim, plaintiff has presented only a legal conclusion, which is not entitled to the presumption of truth. *See Johnson*, 901 F.3d at 977 (explaining that "[a] pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). More specifically, plaintiff presents no factual allegations showing that Dr. McCollum took an adverse action against him based on a retaliatory motive. That is, plaintiff has not demonstrated a causal connection, or that retaliatory animus was the but-for cause of Dr. McCollum's actions. *See Baribeau*, 596 F.3d at 481. Likewise, plaintiff's assertions that Dr. McCollum "teamed up" with Records Clerk Shepard to interfere with his treatment, and that Dr. McCollum falsified computer entries, are both unsupported conclusions, without any factual support to lift the claim to the level of plausibility. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

However, the Court finds that plaintiff's claim of deliberate indifference to his medical needs is adequate for purposes of 28 U.S.C. § 1915 review. Deliberate indifference can include interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346. Here, plaintiff alleges that he has been at NECC since 2015, during which time he was provided ointments,

suppositories, stool softeners, fiber supplements, pads, and baby wipes for his medical condition. He further alleges that Dr. McCollum discontinued these medications and supplies, and did so without a valid medical reason, causing his condition to worsen. Accepting these allegations as true, the Court will direct the Clerk of Court to issue process on Dr. McCollum in his individual capacity as to plaintiff's Eighth Amendment deliberate indifference to medical needs claim only.

### viii.    Records Clerk Shepard

Plaintiff alleges that Records Clerk Shepard violated his rights under the First and Eighth Amendments by interfering with his treatment in retaliation for his use of the grievance process; interfering with his medical treatment; and intentionally withholding medical supplies.

With regard to the First Amendment retaliation claim, plaintiff has presented only a legal conclusion, which is not entitled to the presumption of truth. *See Johnson*, 901 F.3d at 977 (explaining that "[a] pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). More specifically, plaintiff presents no factual allegations showing that Records Clerk Shepard took adverse action against him based on a retaliatory motive. That is, plaintiff has not demonstrated a causal connection, or that retaliatory animus was the but-for cause of Records Clerk Shepard's actions. *See Baribeau*, 596 F.3d at 481. Likewise, plaintiff's assertions that Records Clerk Shepard "teamed up" with Dr. McCollum to interfere with his treatment is an unsupported conclusion, without any factual support to lift the claim to the level of plausibility. *See Hamilton*, 621 F.3d at 817-18 (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

The Court has determined, however, that plaintiff's deliberate indifference to medical needs claim against Records Clerk Shepard is sufficient to pass 28 U.S.C. § 1915 review. Plaintiff states that Records Clerk Shepard was responsible for providing him with medical supplies, and that Shepard continually denied him those supplies, even after being shown plaintiff's medical lay-in. Therefore, the Court will instruct the Clerk of Court to issue process on Records Clerk Shepard in her individual capacity as to plaintiff's Eighth Amendment deliberate indifference to medical needs claim only.

### C.  Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be

29

complex. The Court will entertain future motions for appointment of counsel as the case progresses.

### D.  Motion for Preliminary Injunction and/or Temporary Restraining Order

Plaintiff has filed a motion for preliminary injunction and or temporary restraining order. (Docket No. 6). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated" and the court must determine whether "a cognizable danger of future violation exists and that danger must be more than a mere possibility." *Id*. at 521. The burden of proving that a preliminary injunction should be issued rests with the party seeking injunctive relief. *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

Here, plaintiff has not carried his burden. The facts he has presented do not demonstrate a threat of irreparable harm should an injunction not be issued. Moreover, because this is a situation involving prison administration, there is a risk of injury to the non-moving parties should the Court attempt to intervene before the defendants have been served or given a chance to answer.

Therefore, plaintiff's motion for preliminary injunction and/or temporary injunction will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $6.99 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion for a preliminary injunction and/or temporary restraining order (Docket No. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that the official capacity claims against all defendants are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). An order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the individual capacity claims against defendants Chantay Godert, Kim Samang, and Melody Griffin are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). An order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's claims under the First and Fourteenth Amendments are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). An order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Lukendra Lockhart in her individual capacity as to plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs. Defendant Lockhart shall be served in accordance with the waiver agreement this Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Kalley Campbell, Rachel Slaughter, Jeffrey McCollum, and Sandra Shepard in their individual capacities as to plaintiff's Eighth Amendment claims of deliberate indifference to his medical needs. Defendants Campbell, Slaughter, McCollum, and Shepard shall be served in accordance with the waiver agreement this Court maintains with Corizon.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 22nd day of June, 2020.

_SL R. CL_

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE

32