UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JAMES COOK, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 2:20-cv-00024-SRC |
| | ) |
| LUKENDRA LOCKHART, et al., | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Despite receiving treatment from Northeast Correctional Center's medical staff for complaints of hemorrhoids and other gastrointestinal issues, inmate James Cook filed this Section 1983 lawsuit against a prison guard and several prison medical staff. Cook alleges that Defendants' actions amounted to deliberate indifference to his serious medical needs. Defendants filed motions for summary judgment, which the Court grants.

**I.      Background**

**A.      Procedural history**

During his incarceration at Missouri's Northeast Correctional Center, James Cook filed a 42 U.S.C. § 1983 action against corrections officer Lukendra Lockhart, prison nurses Kalley Campbell[1] and Rachel Slaughter, medical records clerk Sandra Sheppard, prison doctors Jeffrey McCollum and Kim Samang, medical contract monitor Melody Griffin, and Warden Chantay Godert. Cook brought claims under the First, Eighth, and Fourteenth Amendments to the United States Constitution and sued the Defendants in their official and individual capacities. On

---

[1] Cook refers to this Defendant as Kalley Campbell, while the Defendant refers to herself as Kalley Sutton. *Compare* Doc. 1 at p. 1 *with* Doc. 14 at p. 1. No party has raised—or explained—this apparent difference, so the Court considers the discrepancy immaterial.

Section 1915 review, the Court dismissed all of the official-capacity claims, all of the First and Fourteenth Amendment claims, as well as the Eighth Amendment claims against Dr. Samang, Griffin, and Godert.  Doc. 8; *see* 28 U.S.C. § 1915(e)(2)(B).  Only the Eighth Amendment, deliberate-indifference claims against Lockhart, Campbell, Slaughter, Sheppard, and Dr. McCollum survived initial review.

After discovery, Lockhart, Doc. 82, Campbell, Slaughter, Sheppard, Doc. 89, and Dr. McCollum, Doc. 86, moved for summary judgment.  Cook responded only to Campbell, Slaughter, and Sheppard's, and Dr. McCollum's motions.  Docs. 106, 107.  Only Campbell, Slaughter, and Sheppard replied.  Doc. 108.

### B. Uncontroverted material facts

Defendants, in accordance with the Court's Local Rules, submitted statements of uncontroverted material facts.  Cook filed responses to two of the three statements of uncontroverted material facts but failed to do so in compliance with Rule 56(c)(1) of the Federal Rules of Civil Procedure and Local Rule 4.01(E).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides the procedure for supporting factual positions:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Relatedly, Rule 4.01(E) of this Court's Local Rules provides:

2

> (E) Every memorandum in support of a motion for summary judgment must be accompanied by a document titled Statement of Uncontroverted Material Facts . . . . Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts . . . . The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. *All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party*.

E.D. Mo. L.R. 4.01(E) (emphasis added).

Cook failed to follow these rules. In his "Statement of Disputed Factual Issues," Cook merely poses questions like "Whether plaintiff had and/or has a serious medical need." Doc. 107-2 at p. 1. Cook does not specifically controvert Defendants' statements of uncontroverted material facts. Even pro se litigants must comply with substantive and procedural law, including the Court's Local Rules. *Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988); *Bunch v. Univ. of Ark. Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017). Although Cook failed to properly respond to Defendants' statements of material facts, the Court does not automatically grant summary judgment for Defendants. Instead, the Court deems the facts set forth in Defendants' statements admitted pursuant to Local Rule 4.01(E). *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006). Defendants must still establish that they are entitled to judgment as a matter of law. *Id.* Accordingly, the undisputed facts, as set forth in Defendants' statements of facts, are:

### 1.     Lukendra Lockhart

While James Cook served a sentence for robbery at Northeast Correctional Center in Bowling Green, Missouri, Lukendra Lockhart worked as a corrections officer at that prison. Doc. 84 at ¶¶ 1–4. On May 28, 2018, Cook struggled to defecate, causing him to feel strained and lightheaded. *Id.* at ¶ 8. Cook self-declared a medical emergency and a corrections officer

3

allowed Cook to go to the medical wing to be examined. *Id.* at ¶ 9. Cook then walked unassisted to the medical wing and arrived standing and not out of breath. *Id.* at ¶¶ 10–11. Lockhart was standing guard at the medical wing when Cook approached. *Id.* at ¶ 12. Lockhart noticed Cook was not wearing the required grey uniform shirt to enter the medical wing, so she told Cook to return to his cell and change into the required uniform. *Id.* at ¶ 13. The distance between Cook's housing unit and the medical wing is about a block, and Cook told Lockhart that he could not make it back to his housing unit because he felt dizzy. *Id.* at ¶¶ 14–15. Cook did not detail his condition or symptoms or describe to Lockhart why he needed medical attention, but instead told Lockhart that he needed to see a nurse. *Id.* at ¶ 16. Lockhart sent Cook to retrieve his uniform shirt, but after Cook started walking back, he fell in the grass. *Id.* at ¶¶ 17–18. Cook does not allege injuries from this fall. *Id.* at ¶ 19.

Another corrections officer escorted Cook to the medical unit after he fell. *Id.* at ¶ 20. Once he arrived in the medical wing, he was evaluated, did not require oxygen, and was sent back to housing within minutes. *Id.* at ¶ 21. Medical staff found that Cook's vital signs were normal and that he was not experiencing a medical emergency. *Id.* at ¶ 22.

Cook filed an informal resolution request regarding Lockhart's conduct, and then filed a formal grievance. *Id.* at ¶¶ 28–29. Cook never filed a grievance appeal regarding Lockhart's conduct, though Cook did file a reprisal complaint because he felt Lockhart retaliated against him for utilizing the grievance process to address her conduct. *Id.* at ¶¶ 30–31.

      **2.**      **Campbell, Sheppard, and Slaughter**

Kalley Campbell and Rachel Slaughter work at Northeast Correctional Center as registered nurses. Doc. 91 at ¶ 2. In this role, they do not have authority to dictate the course of any patient's medical treatment, nor do they prescribe medications, order laboratory testing,

4

order or request off-site specialist evaluation, order diagnostic testing, or order lay-ins—which the Court understands to mean special privileges—or accommodations. *Id.* at ¶ 3. Sandra Sheppard works at the correctional center as a medical records clerk. *Id.* at ¶ 4. Sheppard handles requests for medical records and distributes certain medical supplies, and she likewise does not have authority to order lay-ins, accommodations, or medications. *Id.* at ¶ 5.

On May 18, 2018, Slaughter saw Cook for complaints of right knee pain, so she referred him to a doctor. *Id.* at ¶ 9. Cook made no gastrointestinal complaints during this visit. *Id.* On June 4, 2018, Cook submitted a health services request complaining of stomach ailments. *Id.* at ¶ 10. On June 14, 2018, a nurse saw Cook for these complaints and referred him to a provider. *Id.* On June 18, 2018, Sheppard issued Cook two abdominal pads and one package of wipes. *Id.* at ¶ 11.

Patients at the correctional center who feel they are experiencing a life-threatening emergency may self-declare an emergency. *Id.* at ¶ 13. Slaughter has no recollection of Cook self-declaring an emergency on June 30, 2018, and Cook's medical records do not reflect that he self-declared an emergency on that day. *Id.* at ¶ 12. If Cook had self-declared an emergency, Campbell and Slaughter would have assessed him and made a record of their assessment. *Id.* at ¶ 14. This is their usual practice and they have never not made a record of their assessment of any patient's self-declared medical emergency. *Id.*

On July 4, 2018, a nurse saw Cook for a self-declared emergency. *Id.* at ¶ 15. Cook complained that he had not been able to defecate for a few days, though he later explained that "he went a little bit ago and it was all blood." *Id.* On exam, a nurse heard bowel sounds and offered to examine Cook's hemorrhoids. *Id.* Cook declined the rectal exam and refused a hemoccult test. *Id.* Cook wanted his complaints documented. *Id.*

5

On July 5, 2018, Cook submitted a health services request to review his medical records and also submitted a request complaining of a stomach ailment. *Id.* at ¶ 16.  A nurse noted that the request was a duplicate. *Id.*  On July 9, 2018, Sheppard issued Cook two abdominal pads, and on July 17, issued him two abdominal pads and one package of wipes. *Id.* at ¶¶ 17–18.  On July 18, 2018, Cook submitted another health services request to review his medical records. *Id.* at ¶ 19.

On July 27, 2018, a nurse saw Cook for a self-declared medical emergency. *Id.* at ¶ 20.  Cook complained that he had not been seen by a doctor and reported occasional lightheadedness and confusion. *Id.*  The nurse noted Cook easily held conversations and exhibited no cognitive defects. *Id.*  Cook had normal bowel sounds and stated that his hemorrhoids were not bleeding and that he was not having problems with them. *Id.*  The nurse reviewed with Cook that he needed to drink fluids. *Id.*  Cook insisted on a blood sugar test which returned a normal result. *Id.*  Cook wanted to make an appointment with a doctor, but the nurse explained that he should do so at sick call. *Id.*

On July 30, 2018, Sheppard issued two abdominal pads to Cook. *Id.* at ¶ 21.  On August 1, 2018, a nurse saw Cook for complaints of blood in his stool. *Id.* at ¶ 22.  On exam, Cook's abdomen was normal. *Id.*  The nurse determined Cook's issue did not constitute a medical emergency and provided Cook with hemoccult tests. *Id.*

On August 6, 2018, a nurse saw Cook for complaints of bloody stool and difficulty urinating. *Id.* at ¶ 23.  Cook did not report nausea, vomiting, diarrhea, or constipation. *Id.*  Cook brought two hemoccult test cards which were negative for blood. *Id.*  Cook's abdomen was soft and nontender. *Id.*  The nurse also performed a urine test which showed no significant abnormalities. *Id.*  On that same day, a nurse noticed a clear zip-lock bag in the trashcan by the

6

pharmacy window with Cook's name on it.  *Id.* at ¶ 24.  The bag contained two new abdominal wipes.  *Id.*  The nurse spoke with a provider who discontinued Cook's lay-in for pads and wipes.  *Id.*  On that same say, another nurse also saw Cook for a self-declared medical emergency.  *Id.* at ¶ 25.  Cook reported abdominal pain, right arm stiffness, and numbness in his right hand.  *Id.*  The nurse noted Cook was not suffering a medical emergency and referred Cook to mental health for anxiety and to a physician for evaluation for sickle cell disease.  *Id.*

At no time did Sheppard hand Cook an open package of supplies.  *Id.* at ¶ 26.  Any supplies she provided to Cook would have been enclosed in a bag.  *Id.*  Sheppard is not aware of any contamination of Cook's medical supplies and also played no role in the discontinuation of any of Cook's lay-ins or accommodations.  *Id.*  Specifically, Sheppard did not call any medical provider to discontinue Cook's lay-in for supplies in August 2018.  *Id.*  Sheppard also did not call any medical provider to discontinue Cook's lay-in for supplies in October 2018.  *Id.*

Sheppard recalls discussing with Cook his request for supplies, though she does not recall the specific date this conversation occurred.  *Id.* at ¶ 28.  During the discussion, Sheppard reviewed Cook's medical record and could not locate a lay-in for the supplies he requested.  *Id.*  Sheppard lacked authority to issue supplies without a lay-in, so she would have told Cook to submit a health services request to discuss the issue with the medical staff.  *Id.*  Sheppard believed that Cook had access to medical treatment through the health services process and through self-declared emergencies.  *Id.*

On November 23, 2018, Cook self-declared an emergency and saw a nurse.  *Id.* at ¶ 30.  The nurse examined him and instructed Cook to submit a sick call request.  *Id.*  On December 9, 2018, Cook self-declared an emergency.  *Id.* at ¶ 31.  A nurse once again examined Cook and determined no emergency existed.  *Id.*  On December 17, 2018, Cook saw a nurse practitioner for

7

complaints of bowel obstruction. *Id.* at ¶ 32. Though Cook's exam was normal, the nurse practitioner ordered an abdominal X-ray, which later returned normal results suggestive of mild or developing constipation. *Id.* at ¶¶ 32, 34. A day later, Cook self-declared an emergency, but, before a nurse could examine him, Cook left the medical wing. *Id.* at ¶ 33.

On February 5 and 7, 2019, Cook saw a nurse practitioner who examined him and performed a prostate exam and hemoccult tests which returned normal results. *Id.* at ¶¶ 35–36. Though Campbell does not recall seeing Cook on February 10, 2019, she did not deny Cook care on that day or any other day. *Id.* at ¶ 37. On February 12 and March 15, 2019, Cook saw nurses who referred him to mental health providers and a doctor. *Id.* at ¶¶ 38–39.

On March 26, 2019, a doctor saw Cook who complained of rectal prolapse and hemorrhoids. *Id.* at ¶ 40. The doctor examined Cook's rectum, which was normal. *Id.* The doctor prescribed baby wipes and a stool softener. *Id.* The same doctor saw Cook again on April 3, 2019, but because Cook's exam was normal, the doctor recommended fluids and exercise. *Id.* at ¶ 41. Campbell does not recall seeing Cook on this day. *Id.*

       3.      **Jeffrey McCollum**

Jeffrey McCollum, a physician licensed in Missouri, worked as a doctor at Northeast Correctional Center on a temporary assignment from July 2018 to September 2019. Doc. 98-1 at ¶¶ 2–3. During his over thirty-year medical career, Dr. McCollum cared for patients with hemorrhoids. *Id.* at ¶¶ 6–7. Dr. McCollum personally cared for James Cook on four occasions: August 15, 2018; November 21, 2018; August 8, 2019; and September 26, 2019. *Id.* at ¶ 8.

Dr. McCollum first saw Cook on August 15, 2018, for concerns of hemorrhoids. *Id.* at ¶ 9. Cook reported that he had "blockage of the colon and concern[s] he might have cancer or blockage by a hemorrhoid." *Id.* (quoting Doc. 98-2 at ¶ 10). Cook denied pain, bleeding, or

8

itching. *Id.* Cook also reported experiencing "that sometimes when he tries to defecate it feels like the stool is there but just won't come out." *Id.* (quoting Doc. 98-2 at ¶ 10). His blood pressure was 128/088 and Cook appeared to be in no acute distress. *Id.* Cook's heart rate was regular, and his lungs were clear. *Id.* Dr. McCollum offered to conduct a rectal exam but Cook declined. *Id.* at ¶ 10.

Because Cook previously tried Metamucil and docusate without success and had reported success with psyllium packets, Dr. McCollum ordered a switch to tamsulosin and psyllium, as well as a follow-up in three months. *Id.* at ¶ 11. At this point, McCollum believed Cook was constipated. *Id.* Medical records from this appointment show that Dr. McCollum did not cancel any of Cook's supplies, like wipes, during this appointment. *Id.* at ¶ 12.

Dr. McCollum saw Cook on November 21, 2018, for a follow-up. *Id.* at ¶ 14. Cook reported that his hemorrhoids cleared. *Id.* Cook now worried about urinary leakage and strong urine odor. *Id.* Cook acknowledged problems in the past with constipation but believed that constipation was no longer a problem. *Id.* Cook reported that his bowel was not clean and that he wanted to try a bowel cleansing medication. *Id.* Dr. McCollum ordered magnesium citrate to address irregular defecation, as well as a variety of tests, including a comprehensive metabolic panel, a complete blood count, and several urine tests. *Id.* These laboratory tests returned normal results. *Id.* at ¶ 15.

A nurse practitioner then saw Cook on December 17, 2018. *Id.* at ¶ 16. During that visit, Cook complained of what he believed to be a bowel obstruction. *Id.* The nurse practitioner recommended a kidney, ureter, and bladder X-ray. *Id.* After hearing this recommendation, Cook denied having bowel issues and then requested surgery. *Id.* Cook then submitted to a kidney, ureter, and bladder X-ray. *Id.* at ¶¶ 16–17. The imaging showed calcifications known as

9

phleboliths, as well as a nonobstructive bowel gas pattern. *Id.* at ¶ 17. These phleboliths require no treatment and do not indicate disease. *Id.*

Dr. McCollum treated Cook again on August 8, 2019. *Id.* at ¶ 18. Cook presented with concerns of anal fullness, sensation of prolapse, and that he emitted odor and discharge that did not visually soil his bedding. *Id.* Cook requested hygienic lay-ins. *Id.* Dr. McCollum conducted an anal examination and found no signs of rectal prolapse, no visual soiling or other abnormality, and normal anal tone. *Id.* Dr. McCollum explained to Cook that he found no evidence of malformation or traumatic changes. *Id.* Dr. McCollum ordered magnesium citrate, a hemorrhoid suppository, a rectal ointment, and a three-month follow-up. *Id.*

Dr. McCollum saw Cook on September 26, 2019, for a follow-up. *Id.* at ¶ 19. Cook reported concerns that he could not completely void stool due to an internal blockage. *Id.* Cook stated that he had this problem for five years and he requested a referral to a general surgeon for evaluation of blockage. *Id.* Cook appeared in no acute distress at this visit. *Id.* Dr. McCollum recommended Cook try lactulose to further loosen his stool so he could void completely. *Id.* Based on Cook's reported symptoms and Dr. McCollum's own evaluation, Dr. McCollum did not believe referral to a general surgeon was medically necessary. *Id.* However, Dr. McCollum did order X-rays to rule out internal blockages, as well as stool cards to test for blood in Cook's stool. *Id.*

Though Dr. McCollum's assignment to the prison ended a few days later on October 1, 2019, Cook's medical records from October 19, 2019, provide the results of the X-ray Dr. McCollum ordered. *Id.* at ¶¶ 20–21. The X-ray showed no obstruction, and evaluations of Cook's stool indicated no blood. *Id.* at ¶ 21.

## II. Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kansas City Power & Light, Co.*, 992 F.2d 804, 807 (8th Cir. 1993). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *See AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

The Court first addresses Lockhart's motion for summary judgment, then Campbell, Sheppard, and Slaughter's motion, and finally, Dr. McCollum's motion.

### A. Lockhart's motion for summary judgment

Lockhart moves for summary judgment on Cook's Eighth Amendment deliberate-indifference claim against her. Among other contentions, Lockhart argues that Cook failed to exhaust his administrative remedies before filing suit, thus barring his claim against her under the Prison Litigation Reform Act. Doc. 83 at pp. 13–15. Cook did not respond to Lockhart's motion for summary judgment.

The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

"An inmate satisfies § 1997e(a) by pursuing 'the prison grievance process to its final stage' to 'an adverse decision on the merits.'" *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quoting *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). In Missouri prisons, the inmate has exhausted the grievance process upon receiving the grievance appeal response. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); Doc. 84-3 at pp. 9–17; *see also Perry v. Figge*, No. 4:13-cv-01883, 2014 WL 2818666, at *3 (E.D. Mo. June 23, 2014) ("For a Missouri prisoner to exhaust all administrative remedies, he must file: (i) an informal resolution request ("IRR"); (ii) a grievance; and (iii) a grievance appeal."). Section 1997e(a)'s "exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Cook filed an initial, informal resolution request concerning Lockhart's conduct on June 4, 2018. Doc. 84 at ¶ 28. Unsatisfied, Cook then filed a grievance on July 18, 2018. *Id.* at ¶ 29. Though Cook went on to file a "reprisal grievance" complaining that Lockhart retaliated against him for using the grievance process, Cook never filed a grievance appeal concerning Lockhart's alleged interference with his medical treatment. Doc. 84 at ¶¶ 30–31; Doc. 84-4 at p. 16 ("[T]here is no record of Plaintiff attempting to file a[] Grievance Appeal."). Moreover, the fact Cook filed a reprisal grievance against Lockhart demonstrates the availability of prison administrative remedies. Thus, Cook failed to exhaust available administrative remedies regarding his claims against Lockhart. For this reason, "dismissal is mandatory." *Johnson*, 340 F.3d at 627. The Court grants Lockhart's motion for summary judgment and dismisses without prejudice Cook's Eighth Amendment claim against her.

**B.    Campbell, Sheppard, and Slaughter's motion for summary judgment**

The Eighth Amendment requires prison officials to provide inmates with medical care. *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (internal citations and quotations omitted). Claims of medical malpractice or negligence in diagnosing or treating a medical condition do not state a valid claim for inadequate medical treatment in violation of the Eighth Amendment. *Id*. at 106. "A plaintiff claiming deliberate indifference must establish objective and subjective components. The objective component requires a plaintiff to demonstrate an objectively serious medical need. The

subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013) (internal citations and quotations omitted). "[P]rison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or . . . prison doctors who fail to respond to a prisoner's serious medical needs" demonstrate deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Estelle*, 429 U.S. at 104–06). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citing *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003)).

In his Complaint, Cook alleges that Campbell and Slaughter violated his rights by interfering with Cook's access to medical care, including his access to examinations and particular treatments. *See, e.g.*, Doc. 1 at ¶¶ 69–72, 75. For example, Cook claimed that on June 30, 2018, Slaughter refused to assess his self-declared emergency. *Id.* at ¶ 15. Cook also alleges that Sheppard violated his rights by denying him medical supplies like baby wipes. *Id.* at ¶¶ 72–74. Campbell, Sheppard, and Slaughter, moving for summary judgment, respond that Cook did not suffer objectively serious medical needs. Doc. 90 at pp. 15–16. Moreover, say Campbell, Sheppard, and Slaughter, even assuming Cook suffered an objectively serious medical need, the undisputed facts show that they were not deliberately indifferent to those needs and that Cook fails to provide any verifying medical evidence that any purported delay in treatment adversely affected his prognosis. *Id.* at pp. 16–19.

Assuming without deciding that Cook suffered objectively serious medical needs, the undisputed facts demonstrate Campbell, Sheppard, and Slaughter were not deliberately indifferent to those needs. Cook's medical records reveal that various medical staff attended to

14

Cook frequently throughout 2018 and 2019, including the numerous times Cook self-declared emergencies. Doc. 91 at ¶¶ 9–11, 15, 17–18, 20–23, 25, 27, 29–36, 38–45. To succeed on his deliberate-indifference claims, Cook must present evidence showing that Campbell, Sheppard, and Slaughter were aware of a serious risk of harm to Cook and ignored that risk. *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997). Cook presents no such evidence. Instead, the undisputed facts show that Campbell and Slaughter neither refused to treat Cook nor disregarded Cook's health services requests. Doc. 91 at ¶¶ 12, 14, 37, 49–50. And the undisputed facts also show that Sheppard failed to issue Cook his medical supplies only when she was unable to locate a lay-in for those supplies. *Id.* at ¶¶ 26, 28. And even if Sheppard should have been able to find Cook's lay-in for wipes, her failure to do so at most constitutes unactionable negligence. *Popoalii*, 512 F.3d at 499; Doc. 90-4 at ¶ 8 ("I reviewed Mr. Cook's medical record and was unable to locate a lay-in for his requested supplies.").

Cook's claims against Campbell, Sheppard, and Slaughter also fail because he has not shown "that he suffered any harm as a result of" their actions. *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006); *see also Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (inmate complaining of delay in medical treatment must present—at the summary judgment stage—verifying medical evidence to show that the delay had detrimental effect). Cook repeatedly asserts that the Defendants "refused Plaintiff emergency medical care" and "delayed, denied, obstructed, and/or interfered with" his care, Doc. 107 at p. 4, but even if this were true—and the undisputed facts show otherwise—no evidence in the record exists showing that these alleged actions had any detrimental effect. Thus, the Court grants Campbell, Sheppard, and Slaughter's motion for summary judgment.

15

## C. Dr. McCollum's motion for summary judgment

As mentioned, under the Eight Amendment, "[d]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii*, 512 F.3d at 499 (citing *Olson*, 339 F.3d at 736). Moreover, "[p]risoners do not have a constitutional right to a particular type of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citation omitted). "Nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment." *Id*. "[T]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii*, 512 F.3d at 499.

In his Complaint, Cook alleges that Dr. McCollum violated his rights by interfering with Cook's prescribed treatment, by discontinuing all of Cook's previously prescribed prescriptions and lay-ins, and by failing to refer Cook to a specialist or surgeon—all without valid medical reasons. Doc. 1 at ¶¶ 29–35, 72–73, 76–77. Dr. McCollum, moving for summary judgment, responds that Cook fails to provide any verifying medical evidence that any purported delay in treatment adversely affected Cook's prognosis. Doc. 98 at pp. 6–8. Moreover, says Dr. McCollum, even assuming Cook suffered an objectively serious medical need, the undisputed facts show that McCollum was not deliberately indifferent to those needs. *Id.* at pp. 9–11.

Assuming without deciding that Cook suffered objectively serious medical needs, the undisputed facts demonstrate Dr. McCollum was not deliberately indifferent to those needs. At Cook's first visit, Dr. McCollum offered a rectal exam, ordered a switch in medicine from Metamucil and docusate to tamsulosin and psyllium packets (partly because Cook indicated psyllium packets worked for him) and recommend a three-month follow-up. Doc. 98-1 at ¶¶ 9– 12. At the first follow-up in November 2018, Cook reported that his hemorrhoids had cleared.

16

*Id.* at ¶ 14. At that same visit, Cook instead complained of urinary leakage and bowel uncleanliness. *Id.* So, Dr. McCollum then ordered a bowel cleansing medication and various blood tests which returned normally. *Id.* at ¶¶ 14–15. X-rays a nurse practitioner ordered likewise did not indicate any need for additional treatment. *Id.* at ¶¶ 16–17.

At a second follow-up in August 2019, Cook presented with concerns of anal fullness, sensation of prolapse, and that he emitted odor and discharge. *Id.* at ¶ 18. Dr. McCollum conducted an anal examination and found no signs of rectal prolapse, no visual soiling or other abnormality, and normal anal tone. *Id.* After explaining his findings to Cook, Dr. McCollum ordered magnesium citrate, a hemorrhoid suppository, a rectal ointment, and a three-month follow-up. *Id.* In another follow-up in September 2019, Cook complained that he could not completely void stool due to a sense of blockage. *Id.* at ¶ 19. Believing referral to a surgeon or other specialist not medically necessary, Dr. McCollum ordered a new stool softener, ordered X-rays to rule out any blockage, and stool testing to check for blood. *Id.* The X-rays and stool hemoccult tests returned normal results. *Id.* at ¶¶ 21–22.

Cook bases his deliberate indifference claims on Dr. McCollum's alleged interference with his course of treatment, yet the evidence shows that each treatment decision made by Dr. McCollum had a medical basis. As provided above, "the records show [Dr. McCollum] tried numerous treatments and constantly responded to [Cook]'s complaints or his overall condition." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). Dr. McCollum repeatedly examined Cook and treated his complaints about rectal and gastrointestinal issues. "In fact, at various times [Cook] reported to his health care providers various treatments were providing some relief." *Id.*

While Cook apparently disagrees with Dr. McCollum's treatments, including his decision not to refer Cook to a surgeon, "a healthcare provider need not accept as true medical judgments

17

offered by [his] patients but must make treatment decisions on the basis of many factors, only one of which is patient's input." *Id.* at 772–73 (citations omitted); *see also Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (holding mere disagreement with treatment decisions does not rise to the level of a constitutional violation). Rather, evidence must show that Dr. McCollum was aware of a serious risk of harm to Cook and ignored that risk. *Logan*, 119 F.3d at 649. No such evidence exists here. Viewing the evidence and undisputed facts in the light most favorable to Cook, "the treatments provided were not so ineffective as to be criminally reckless and therefore rise to the level of deliberate indifference," *Allard*, 779 F.3d at 773, and the Court grants Dr. McCollum's motion for summary judgment.

### IV.   Conclusion

For the foregoing reasons, the Court grants the Defendants' [82] [86] [89] motions for summary judgment, dismisses without prejudice Cook's Eighth Amendment deliberate-indifference claims against Lockhart, and enters judgment in favor of Campbell, Sheppard, Slaughter, and Dr. McCollum on Cook's deliberate-indifference claims against them. A separate judgment accompanies this memorandum and order. The Court certifies that an appeal from this order would not be taken in good faith.

So Ordered this 22nd day of July 2022.

*SLR.CC*

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE